## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**NANCY CLOUTIER,**

         **Plaintiff,**

**vs.**                                                   **No. CIV 11-0565 RB/WDS**

**GEICO INSURANCE COMPANY,**
**A Foreign corporation doing business in**
**the State of New Mexico,**

         **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's ("GEICO's") Motion for Partial

Summary Judgment (Doc. 32) and Motion to Strike Affidavit of Keith Harvie, D.O. (Doc. 38).

Jurisdiction arises under 28 U.S.C. § 1332.  Having considered the arguments and submissions of

counsel, relevant law, and otherwise being fully advised, the Court grants the motion to strike and

denies the motion for partial summary judgment.

**I.      Background**

On February 9, 2009, Plaintiff ("Ms. Cloutier") was involved in an automobile accident in

Rio Rancho, New Mexico.  Leah Montano failed to yield the right of way, causing her 2001

Saturn to collide with Ms. Cloutier's 2000 Acura.  Ms. Montano was insured by Allstate

Insurance Company and Allstate paid Ms. Cloutier the $25,000 policy limit on Ms. Montano's

liability policy.  At the time of the accident, Ms. Cloutier resided with her daughter and son-in-

law, who had an uninsured/underinsured motorist policy with GEICO.  Since Ms. Cloutier was a

resident of their household, she made an underinsured motorist claim with GEICO.  The parties

dispute the cause and extent of Ms. Cloutier's injuries. GEICO moves for partial summary judgment on the question of whether the collision caused any injury to Ms. Cloutier's right shoulder. Ms. Cloutier opposes this motion and attaches the affidavit of Keith Harvie, D.O. to her response. GEICO moves to strike Dr. Harvie's affidavit. Ms. Cloutier opposes the motion to strike.

## II.    Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (quoting FED. R. CIV. P. 56(e) (2007 version)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009).

## III.    Statement of Facts

The Court must view the facts in the light most favorable to Ms. Cloutier, the non-moving party. *See id.* Thus, all reasonable inferences are drawn and factual ambiguities are resolved in

her favor.  The collision resulted in heavy damage to both vehicles.  (Doc. 33-1, Davis Report at 7).  At the accident scene, Ms. Cloutier reported to emergency medical personnel that she had neck pain and a history of previous neck injury, but she refused evaluation and transport to the hospital.  (*Id.*)  About six hours later, Ms. Cloutier presented to the Presbyterian Medical Center Emergency Department for evaluation.  (*Id.*)  Ms. Cloutier stated that her chest had hit the steering wheel during the accident, but she did not begin to hurt "until later."  (*Id.*)  Ms. Cloutier complained of upper back and neck pain as well as abdominal discomfort, but examination revealed no objective signs of traumatic injury.  (*Id.* at 7-8).  X-rays of her chest, cervical spine and thoracic spine, as well as an abdominal CT scan were normal.  (*Id.* at 8)  Ms. Cloutier had no complaints of shoulder pain and no sign of shoulder injury.  (*Id.*)  The diagnosis was cervical strain.  (Doc. 40-2, Pachelli Dep. at 25).

During a February 17, 2009 follow up appointment at Presbyterian Medical Center, a medical provider wrote that Ms. Cloutier had right shoulder pain and a limited range of motion in her right shoulder.  (Doc. 37-3).  The handwritten note is mostly illegible.  (*Id.*)  A March 15, 2009 examination at Presbyterian Medical Center showed that Ms. Cloutier had a normal range of motion.  (Doc. 40-2, Pachelli Dep. at 25).

On May 5, 2010, Ms. Cloutier was examined by Anthony Pachelli, M.D., a board certified orthopedic surgeon.  (Doc. 37-4).  Dr. Pachelli noted that Ms. Cloutier's chief complaint was "workers comp new right shoulder pain."  (*Id.*)  Ms. Cloutier recounted that the pain had been a problem for one year, and the right shoulder pain first occurred following the motor vehicle accident on February 9, 2009, during work-related travel.  (*Id.*)  The injury had been reported to workers' compensation.  (*Id.*)  Dr. Pachelli noted that "[t]he problem is causally related to the

3

injury and to work." (*Id*.) Dr. Pachelli diagnosed acromial clavicular arthritis, neck pain, and degenerative rotator cuff. (Doc. 40-1, Pachelli Dep. at 9). On August 10, 2010, Dr. Pachelli performed rotator cuff repair, decompression, removal of a bone spur, and removal of the end of Ms. Cloutier's collar bone. (*Id*. at 14). After the surgery, Ms. Cloutier's recovery was unremarkable. (*Id*.) On May 10, 2011, Dr. Pachelli determined Ms. Cloutier had reached maximum medical improvement and gave her a total impairment rating of three percent. (*Id*. at 20).

At his deposition, on March 23, 2012, Dr. Pachelli opined that Ms. Cloutier's injuries were caused by the February 9, 2009 motor vehicle accident. (*Id*. at 7). However, after reviewing Ms. Cloutier's medical records from February and March 2009, Dr. Pachelli clarified that it was less likely the motor vehicle collision caused the shoulder injury, but he could not rule out the possibility. (Pachelli Dep. at 9, 14, and 25-27). Additionally, Dr. Pachelli opined that the right shoulder injury was possibly caused by Ms. Cloutier continuously lifting thirty-pound boxes on November 3, 2009. (Pachelli Dep. at 28). Based on his review of Ms. Cloutier's medical records, Dr. Pachelli testified at his deposition that "[i]t makes me think that the causation being from the motor vehicle accident is less likely." (Pachelli Dep. at 24). Dr. Pachelli found it significant that Ms. Cloutier's medical records from February and March 2009 did not document significant complaints of shoulder pain or any physical findings of problems with her right shoulder. (Pachelli Dep. at 37-38).

In an affidavit, Dr. Keith Harvie, D.O., a board certified orthopedic surgeon, stated that he had reviewed Ms. Cloutier's medical records and spoken to Ms. Cloutier about her medical history. (Doc. 37-2). Dr. Harvie opined to a reasonable degree of medical probability that the

February 9, 2009 accident aggravated a pre-existing injury to Ms. Cloutier's shoulder, and the

aggravation of this injury caused the need for surgical repair to Ms. Cloutier's shoulder. (Harvie

Affidavit).

GEICO's expert witness, G. Theodore Davis, M.D., a board certified orthopedic surgeon,

reviewed Ms. Cloutier's medical records and prepared a report, dated April 26, 2012. (Doc. 33-

1). In his report, Dr. Davis opined:

> There is however no medical basis to support a conclusion that [Ms. Cloutier] had
> in any manner sustained a clinical mechanism of injury to her right shoulder or
> other body regions, or that from a clinical mechanism of injury perspective, the
> circumstances surrounding this event [the accident of February 9, 2009] would lead
> to a conclusion that medically serious injury or protracted recovery would be
> medically probable.

(Doc. 33-1, Davis Report at 8-10).

## IV.    Discussion

GEICO moves to strike the affidavit of Dr. Harvie on the grounds that Ms. Cloutier failed

to identify him within the deadline and did not disclose his report as required by FED. R. CIV. P.

26(a)(2)(A & B). Ms. Cloutier responds that Dr. Harvie is a consulting witness who was called

on to present his opinion on the causation issue raised on GEICO's summary judgment motion, a

consulting expert is not required to prepare an expert report, and even if Dr. Harvie's affidavit is

excluded, the Court should review the two pages of exhibits attached to his affidavit. (Doc. 44).

GEICO replies that only admissible evidence may be considered to show that there is a genuine

issue of material fact and the records attached to the affidavit should be stricken. (Doc. 45).

A consulting expert is retained in anticipation of litigation or to prepare for trial and he

does not testify at trial. FED. R. CIV. P. 26(b)(4)(D). In that a consulting expert does not testify at

trial, the opposing party is not entitled to discovery about a consulting expert. *Id.* A testifying expert, on the other hand, testifies at trial, and therefore the parties are entitled to discovery regarding a testifying expert. *See* FED. R. CIV. P. 26(a)(2) and 26(b)(4)(A). Although Ms. Cloutier may have initially retained Dr. Harvie as a consulting expert, when she submitted his sworn affidavit (i.e., his testimony) to the Court in response to the summary judgment motion Dr. Harvie became a testifying expert. The fact that Ms. Cloutier submitted Dr. Harvie's testimony to resist summary judgment rather than at trial is inconsequential, given that the purpose of summary judgment is to determine, based on all of the evidence gleaned in discovery, whether any disputed issues of material fact exist for trial. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."). Adopting Ms. Cloutier's reasoning would allow parties to hire "consulting" experts, fail to disclose them to opposing counsel, and then submit affidavits from those experts to block summary judgment. Such a result would run counter to the Federal Rules of Civil Procedure.

The Federal Rules of Civil Procedure require each party to disclose the "identity of any [expert] witness it may use at trial." FED. R. CIV. P. 26(a)(2)(A). Where the expert is retained to provide expert testimony at trial, the disclosure must be accompanied by a written report that includes, among other things, a statement of all opinions that the witness will give and a statement of the witness's compensation for the testimony. FED. R. CIV. P. 26(a)(2)(B). The disclosure must be made by the date set by the court. FED. R. CIV. P. 26(a)(2)(D). The scheduling order required Ms. Cloutier to make her expert disclosures no later than April 3, 2012. (Doc. 18). On April 3, 2012, Ms. Cloutier identified thirteen expert witnesses, but not Dr. Harvie. (Doc. 24).

Discovery closed on July 2, 2012.  (Doc. 18).  Ms. Cloutier filed Dr. Harvie's affidavit on September 21, 2012.  (Doc. 37-1).  Thus, Ms. Cloutier failed to timely comply with Rule 26(a)(2).

Federal Rule of Civil Procedure 37(c)(1) provides that a failure to comply with Rule 26(a) precludes the use of the expert information "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).  Before granting a motion to strike a witness, the Court must consider four factors in determining whether the failure to timely disclose is substantially justified or harmless: (1) the prejudice or surprise to the impacted party, (2) the ability to cure the prejudice, (3) the potential for trial disruption, and (4) the erring party's bad faith or willfulness.  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  "The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosures."  *See Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995).

Ms. Cloutier does not dispute that she failed to disclose Dr. Harvie within the time set by the Court; rather she contends that disclosure was not required because Dr. Harvie is a consulting witness who will not be called at trial.  Ms. Cloutier's argument is inapposite.  It is well settled in the Tenth Circuit that courts can consider only admissible evidence when ruling on a motion for summary judgment, assuming a proper objection has been made.  *See Johnson v. Weld Cnty, Colo.*, 594 F.3d 1202, 1209 (10th Cir. 2010).  Regardless, the *Woodworker's* factors weigh in favor of striking Dr. Harvie as a witness.  GEICO is prejudiced by the late identification of Dr. Harvie because it was deprived of the opportunity to depose him.  GEICO is unable to cure this prejudice because discovery closed over three months before Ms. Cloutier identified Dr. Harvie.  The jury trial is set to begin in two months.  Ms. Cloutier does not offer an explanation for the

7

untimely disclosure.  The Court will grant GEICO's motion to strike Dr. Harvie's affidavit.  The two pages of exhibits attached to the affidavit consist of medical records from Presbyterian Medical Center and Dr. Pachelli, dated February 17, 2009, and May 10, 2010.  As these records could be admissible through witnesses other than Dr. Harvie, the Court will consider them for summary judgment purposes.

In the summary judgment analysis, GEICO bears the burden of showing that no genuine issue of material fact exists.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  Because GEICO does not bear the ultimate burden of persuasion at trial, however, it does not have to negate causation, but may meet its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.

Causation is usually a question of fact for the jury.  *See Lerma v. State Highway Dep't*, 877 P.2d 1085, 1087-88 (N.M. 1994).  However, it is only a question of fact if reasonable minds could differ on the issue.  *Id.*  GEICO met its summary judgment burden through the opinion of Dr. Davis.  In response, Ms. Cloutier relies on a notation by a medical provider that Ms. Cloutier complained of shoulder pain eight days after the accident, Dr. Pachelli's notation that the problem was causally related to the injury and work, and Dr. Pachelli's initial deposition testimony that Ms. Cloutier's injuries were caused by the motor vehicle accident.  Based on this record, while evidence linking the shoulder injury to the collision is scant, reasonable minds could differ on the issue of causation.  Accordingly, summary judgment would be inappropriate.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Strike Affidavit of Keith Harvie, D.O. (Doc. 38) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 32) is **DENIED.**


_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**